STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronnie F. NICHOLSON, Defendant-Appellant.†

Court of Appeals

*No. 93–3238–CR. Submitted on briefs August 16, 1994.—Decided September 28, 1994.*

(Also reported in 523 N.W.2d 573.)

†Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gary M. Luck* of Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. Ronnie F. Nicholson appeals from a judgment of conviction of first-degree intentional homicide, party to a crime, in violation of §§ 940.01 and 939.05, STATS., and an order denying postconviction relief. Because we conclude that Nicholson's mother was not an agent of the police when she initiated discussions with Nicholson, that Nicholson voluntarily gave his statement during confession negotiations and that his trial counsel was not ineffective, we affirm.

Detectives from the Racine County Sheriff's Department were in Mississippi on January 30 and February 1 and 2, 1991, with a criminal complaint and arrest warrant for Nicholson in connection with the murder of John Hickman. Detectives McReynolds and Gustafson's initial contact with Nicholson was in the Jasper county jail where he had been apprehended by Jasper county officials. Nicholson was advised of his *Miranda*[1] rights prior to talking with the detectives on February 1, 1991. Nicholson waived his *Miranda* rights and agreed to speak with the detectives. He ini-

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

tially denied knowing Hickman or having any involvement with his death. When the detectives asked Nicholson to sign a written statement, he said that he would not sign anything until he spoke to an attorney. At that point, the detectives stopped the interview.

Later that day, the detectives were told by Jasper county officials that Nicholson's mother, Mary Helen Nicholson, had requested to meet with them. The detectives met with Mrs. Nicholson on February 2, 1991. The detectives told Mrs. Nicholson that her son was charged with first-degree intentional homicide and that it was possible that he would be sentenced to life in prison without parole. The detectives explained to Mrs. Nicholson that they believed there was enough evidence to convict her son. Mrs. Nicholson told the detectives that she thought the best thing for Nicholson to do was to tell his side of the story. She requested to see her son. The detectives told her that she would have to speak with the Jasper county officials.

After receiving approval by the Jasper county officials, Nicholson and his mother spoke together in an office located at the county jail while the detectives waited outside. McReynolds could see them through the office window. After approximately ten minutes, Nicholson motioned for McReynolds to come into the office. After McReynolds came into the room, Mrs. Nicholson said that she had told her son to tell the truth. Nicholson told McReynolds that he wanted to talk about what had happened. He proceeded to tell both detectives that he was in the room when the murder occurred, but that he did not commit the actual murder. Nicholson asked the detectives if he would receive "some slack in sentencing" if he provided a statement. McReynolds and Gustafson testified that they discussed with Nicholson the possibility that the

district attorney would stand silent at sentencing. After discussing the deal with the detectives, Nicholson said that he wanted to talk with someone in the district attorney's office who had the authority to make the deal. The detectives called District Attorney Lennie Weber.

Weber testified that she told Nicholson that he would be charged with first-degree intentional homicide and the State would stand silent on a recommendation for parole eligibility in exchange for his truthful statement as to his involvement, if any, in the Hickman homicide. She indicated, however, that sentencing was totally within the judge and parole board's discretion. Gustafson testified that after Nicholson spoke with Weber, they discussed the agreement. Nicholson was then read his *Miranda* rights.[2] Gustafson testified that Nicholson signed the rights and waiver form. Nicholson then signed the written agreement containing the deal that he had made with the district attorney. He then gave his statement which was prepared in writing. The written statement was read to Nicholson by his mother. Nicholson signed the statement in the presence of his mother and the detectives.

On January 10, 1992, the trial court denied Nicholson's pretrial motion to suppress the statement he made to the detectives in Mississippi. On January 30,

---

[2] There was some conflict in McReynolds' testimony as to when Nicholson was read his *Miranda* rights in relationship to the time when his agreement with the district attorney was discussed and the written form of the agreement was signed. Additionally, there was a conflict between the time in the written agreement as to when the conversation with Weber occurred and the timing of the waiver of rights, and Gustafson's recollection at trial as to the sequence of these events.

1992, a jury found Nicholson guilty of first-degree intentional homicide, party to a crime. Nicholson made a motion for postconviction relief involving ineffective assistance of counsel. The trial court subsequently denied Nicholson's postconviction motion in its entirety. Nicholson appeals from the judgment of conviction and order denying his motion for postconviction relief.

Nicholson argues that his constitutional right to counsel was violated when his mother, as an agent for the police, initiated questioning after he had requested an attorney; that his statement was involuntary; that his statement was taken during plea negotiations and was, therefore, inadmissible under § 904.10, STATS; and that he received ineffective assistance of counsel.

We will not upset the trial court's findings of evidentiary and historical fact unless they are clearly erroneous. *State v. Turner*, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827, 832 (1987). The validity of a confession made after a request for counsel, however, involves questions of constitutional fact which are subject to independent appellate review and require an independent application of the constitutional principles involved to the facts as found by the trial court. *Id.* at 344, 401 N.W.2d at 832-33. Additionally, whether a trial counsel provides effective assistance is a mixed question of law and fact. Whether the trial counsel's performance was deficient and prejudicial to the defendant is a question of law which we review de novo. *State v. Pitsch*, 124 Wis. 2d 628, 633-34, 369 N.W.2d 711, 714-15 (1985).

Nicholson argues that his confession was taken contrary to *Edwards v. Arizona*, 451 U.S. 477 (1981). In *Edwards*, the Supreme Court held that once a sus-

pect has invoked his or her right to counsel, police must stop questioning the suspect until he or she initiates discussions with the police. *Id.* at 484-85. Nicholson contends that after he had refused to sign a written statement and requested an attorney, his mother, as an agent of the police, "initiated" questioning.

This issue requires an analysis of whether or not Mrs. Nicholson was an agent of the State. In *State v. Lee*, 122 Wis. 2d 266, 362 N.W.2d 149 (1985), the supreme court established four facts to consider in deciding when a civilian becomes an agent of the police:

(1) whether it was the citizen or the police who initiated the first contact with the police;

(2) whether it was the citizen or the police who suggested the course of action that was to be taken;

(3) whether it was the citizen or the police who suggested what was to be said to the suspect; in other words, was the citizen, in essence, a message carrier for the police;

(4) whether it was the citizen or the police who controlled the circumstances under which the citizen and the suspect met; whether the control was extensive or incidental.

*Id.* at 276-77, 362 N.W.2d at 153 (citations omitted). Nicholson contends that under a *Lee* analysis, his mother acted as an agent for the detectives when she discussed his situation with the police and then proceeded to speak with him.

We disagree with Nicholson's conclusion that under a *Lee* analysis Mrs. Nicholson was an agent of the police. Mrs. Nicholson initiated the first contact with the detectives and did nothing more than convey

to the detectives her thoughts as to what was best for her son. Additionally, it was Nicholson who motioned the police to enter the room after the discussion with his mother had taken place. Simply because the discussion between Nicholson and his mother took place in the Jasper county jail does not indicate to this court that Mrs. Nicholson was acting as an agent of the police. We hold that Mrs. Nicholson's conduct did not rise to the level of agent as contemplated in *Lee*.

Next, Nicholson argues that his confession was involuntary. He contends that "the use of his mother as a messenger was a form of coercion which robbed him of the ability to make a confession which was the voluntary product of a free and unconstrained will, reflecting deliberateness of choice."

We disagree and hold that Nicholson's confession was made voluntarily. "In determining whether a confession was voluntarily made, the essential inquiry is whether the confession was procured via coercive means or whether it was the product of improper pressures exercised by the police." *State v. Clappes*, 136 Wis. 2d 222, 235-36, 401 N.W.2d 759, 765 (1987). In the present case, the detectives did not physically threaten Nicholson. Nicholson was taken to the bathroom and given cigarettes upon request. The circumstances surrounding Nicholson's discussion with his mother, who we conclude was not an agent of the police, give no indication that the discussion produced an involuntary confession. Nicholson provides no evidence that his statement was made involuntarily under the standards articulated in *Clappes*.

Nicholson next argues that his confession was admitted in violation of § 904.10, STATS. Section 904.10 provides:

> **Offer to plead guilty; no contest; withdrawn plea of guilty.** Evidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.

Nicholson contends that his statement as to his involvement in the Hickman murder was "made to the prosecuting attorney in connection with plea negotiations" and, therefore, was inadmissible.

We must determine whether the discussions between Nicholson and the district attorney were plea negotiations or confession negotiations. In *Pontow v. State*, 58 Wis. 2d 135, 205 N.W.2d 775 (1973), the court distinguished confession bargaining from plea bargaining. While statements made within the context of plea negotiations are inadmissible under § 904.10, STATS., statements made during confession negotiations by an unrepresented defendant can be admissible if the State proves beyond a reasonable doubt that the defendant confessed voluntarily. *See id.* at 143, 205 N.W.2d at 779. However, "[t]he confession bargain will be subjected to severe *post hoc* scrutiny." *Id.* at 142, 205 N.W.2d at 779.

Importantly, in *United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978), the Fifth Circuit Court of Appeals articulated a two-tiered analysis to determine whether a discussion should be characterized as a plea negotiation:

The trial court must . . . determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

*Id.* at 1366. We adopt the *Robertson* court's two-part analysis and apply it to the facts of the present case.

Soon after Nicholson motioned for McReynolds to enter the room, he admitted his involvement in the murder and asked for "slack" in sentencing. The detectives conveyed what they knew about the district attorney's position on sentencing. Nicholson initiated the conversation with Weber. When Nicholson and Weber spoke, she stated that if he gave a truthful statement she would remain silent at his sentencing. The *quid pro quo* consisted of Nicholson giving a truthful statement in exchange for the district attorney remaining silent. Nicholson did not exhibit any expectations to negotiate a plea during the discussion with the district attorney. Given the circumstances, there was no reasonable basis for Nicholson to believe that he could negotiate a plea. We hold that under a *Robertson* analysis, the negotiations between Nicholson and the district attorney were not plea negotiations, but rather, constituted negotiations for a confession and, therefore, § 904.10, STATS., does not apply. Because we believe that Nicholson's statement was made voluntarily, beyond a reasonable doubt, we conclude that his confession was admissible.

Nicholson also argues that his trial counsel was ineffective because he failed to request Wisconsin Jury Instruction 180. WIS J I—CRIMINAL 180, which instructs the jury on confessions-admissions, provides:

> The State has introduced evidence of (a statement) (statements) which it claims (was) (were) made by the defendant. It is for you, the jury, to determine how much weight, if any, to give to (this) (each) statement.
>
> In evaluating (the) (each) statement, you should consider three things.
>
> First, you must determine whether the statement was actually made by the defendant. Only so much of a statement as was actually made by a person may be considered as evidence.
>
> Second, you must determine whether the statement was accurately restated here at trial.
>
> Finally, if you find that the statement was made by the defendant and accurately restated here at trial, you must determine whether the statement is trustworthy. 'Trustworthy' simply means whether the statement ought to be believed.
>
> You should consider the facts and circumstances surrounding the making of (the) (each) statement, along with all the other evidence in the case, in determining how much weight, if any, the statement deserves.

The trial counsel's theory was that the confession was fabricated; therefore, he did not want the jury instruction on confessions-admissions because it contradicted this theory.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test to determine whether there was ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'the counsel' guaranteed the defendant by the Sixth Amendment. Second, the

> defendant must show that the deficient perform-
> ance prejudiced the defense. This requires showing
> that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is
> reliable. Unless a defendant makes both showings,
> it cannot be said that the conviction or death sen-
> tence resulted from a breakdown in the adversary
> process that renders the result unreliable.

*Id.* at 687. In addition, the Wisconsin Supreme Court
has developed a line of case law which addresses
whether trial counsel was ineffective. While trial coun-
sel must act prudently and with caution, the Wisconsin
Supreme Court "has often stated that it disapproves of
postconviction counsel second-guessing the trial coun-
sel's considered selection of trial tactics or the exercise
of a professional judgment in the face of alternatives
that have been weighed by trial counsel." *State v. Fel-
ton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161, 169 (1983).

We conclude that trial counsel's decision not to
instruct the jury to consider the facts and circum-
stances surrounding the confession, when Nicholson
contended that he had never confessed, was reason-
able. The trial counsel's decision to exclude WIS J I-
CRIMINAL 180 from the instructions was a prudent,
tactical decision which we will not second-guess.

*By the Court.*—Judgment and order affirmed.