# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2513-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent-Petitioner, |
| |     v. |
| | Raphfeal Lyfold Myrick, |
| |         Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 351 Wis. 2d 32, 839 N.W.2d 129
(Ct. App. 2013 – Published)
PDC No: 2013 WI 123

| | |
|---|---|
| OPINION FILED: | July 10, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 9, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Rebecca F. Dallet |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) |
|   DISSENTED: | GABLEMAN, PROSSER, ZIEGLER, JJJ., dissent. (Opinion filed.) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-appellant, there was a brief and oral argument by *Steven W. Zaleski*, Madison.

An amicus curiae brief and oral argument by *Leon W. Todd*, assistant state public defender, with whom on the brief was *Kelli S. Thompson*, state public defender, on behalf of the Wisconsin State Public Defender.

No. 2012AP2513-CR
(L.C. No. 2009CF3494)

STATE OF WISCONSIN             :      IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

      **v.**

**Raphfeal Lyfold Myrick,**

      **Defendant-Appellant.**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

**FILED**

**JUL 10, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] that reversed a judgment of conviction entered by the Milwaukee County Circuit Court.[2] Relevant to our review, a jury convicted defendant Raphfeal Lyfold Myrick of first-degree intentional homicide contrary to Wis. Stat.

---

[1] State v. Myrick, 2013 WI App 123, 351 Wis. 2d 32, 839 N.W.2d 129.

[2] The Honorable Rebecca F. Dallet presided.

§ 941.29(1) (2011-12).[3] Myrick argues that the circuit court improperly admitted incriminating statements he made during the preliminary hearing for charges against Justin Winston. Myrick claims that he made those statements in connection with an offer to plead guilty, and therefore Wis. Stat. § 904.10, which provides that "[e]vidence of statements made in court . . . in connection with . . . an offer . . . to plead guilty . . . [are] not admissible," prohibited their admission. The State counters that § 904.10 does not apply because it was the prosecutor, not Myrick, who made an offer; Myrick only "accepted the prosecutor's offer to allow him to plead guilty."[4]

¶2   We conclude that Wis. Stat. § 904.10 prohibited the use of Myrick's preliminary hearing testimony at trial. While it is true that the prosecutor made the initial overture to begin the plea bargaining process, Myrick offered to plead guilty and testified at Winston's preliminary hearing in connection with that offer. We reach this conclusion not out of disregard for the distinction between offer and acceptance, but

---

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

The circuit court also entered a judgment on Myrick's guilty plea for unlawfully possessing a firearm as a previously convicted felon, which is not part of this review.

[4] Oral argument at 9:30, available at http://www.wiseye.org/Programming/VideoArchive/EventDetail.aspx?evhdid=8588 (last visited June 20, 2014).

The State phrases its position slightly differently in its brief, contending that "Myrick accepted an offer to make an offer to allow him to plead guilty."

2

because only a defendant can offer to plead guilty. We also note that a defendant's offer to plead guilty does not need to be express or explicit; it can be implied from words and conduct. See State v. Norwood, 2005 WI App 218, ¶¶13, 20, 287 Wis. 2d 679, 706 N.W.2d 683; State v. Nicholson, 187 Wis. 2d 688, 698, 523 N.W.2d 573 (Ct. App. 1994). In addition to reflecting the plain language of the statute, our conclusion is consistent with the statute's purpose, which is to encourage free and open discussion between prosecutor and defendant during plea negotiations. See State v. Nash, 123 Wis. 2d 154, 159, 366 N.W.2d 146 (Ct. App. 1985). Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND[5]

¶3  On July 26, 2009, Winston picked Myrick up from work and decided to go look for a man called "Cooper," with whom Myrick and Winston had a history of disagreements. When the two arrived at Cooper's house, Winston got out of the car and went inside while Myrick remained in the car. A short while later, Winston came out holding a man with a shirt covering his face at gunpoint. That man was not Cooper, but the murder victim, Marquise Harris, who was a stranger to Myrick.

¶4  After attempting to tell Winston that he had the wrong person, Myrick nonetheless opened the hatch of the vehicle so that Winston was able to force Harris into the back, where

---

[5] The following facts are taken from Myrick's testimony at Winston's preliminary hearing, as well as Myrick's statements to the prosecutor.

Winston continued to hold Harris at gunpoint. Following Winston's directions, Myrick drove around for a while and ended up in an alley. All three individuals got out of the car.

¶5 Winston handed Myrick a pistol and told Myrick to shoot Harris. Myrick fired a shot that missed Harris and went into a garage. Harris hit the ground, and Myrick jumped in the passenger seat of the car. Winston, who was in the driver's seat, noticed that Harris was not dead. Winston then fired multiple shots from an assault rifle into Harris and sped off.

¶6 Police pulled Winston over minutes later for speeding, at which point Winston fled on foot and Myrick got out of the car, dropped a gun, and was arrested.

¶7 The State charged Myrick with first-degree intentional homicide as a party to the crime. Myrick pled not guilty to the homicide charge. The theory of his defense was that he did not help Winston kill Harris; he attempted to hinder Winston by intentionally missing when he shot at Harris.

¶8 On June 28, 2010, jury selection for Myrick's trial began. Two days later, however, the court declared a mistrial. It began voir dire for a new trial that same day, and set the trial for July 6.

¶9 Before the second trial began, the State sent Myrick a letter. It stated that if Myrick "debriefed" the State and agreed to "testify truthfully whenever called upon by the State" regarding Winston's criminal conduct, the State "w[ould] amend the charge regarding the murder of Marquise Harris to one of Felony Murder with an underlying charge of Armed Robbery." The

4

State was particularly interested in Myrick's cooperation because it suspected that Winston had killed not only Harris, but also Maurice Pulley, a witness for the State in a previous trial.  The letter went on to say, however, that "it w[ould] be at the discretion of [the] district attorney's office . . . as to whether the above negotiation will be conveyed to [Myrick] to settle the . . . case short of trial."

¶10 The same day the State sent the letter, Myrick debriefed the State, thereby implicating himself in Harris' murder.  When the parties appeared for trial on July 6, they informed the court that a resolution had been reached, but no plea was taken.  Myrick proceeded to testify at Winston's preliminary hearing, making additional incriminating statements about his involvement in Harris' murder.

¶11 Myrick's cooperation ended after he read a newspaper article that said Myrick shot Harris in the head.  Myrick became distrustful of the State, believing it had leaked false information to the press.  Because of his distrust, he refused to testify at Winston's trial, thereby terminating plea negotiations.  Myrick subsequently went to trial on the homicide charge.

¶12 At trial, the State sought to introduce Myrick's testimony from Winston's preliminary hearing.  Myrick objected, arguing that admitting his testimony was improper because he gave it in connection with an offer to plead guilty.  See Wis. Stat. § 904.10.

¶13 The circuit court overruled Myrick's objection, concluding that the statute did not apply to Myrick's testimony because he gave it after a plea agreement had been reached. See Nash, 123 Wis. 2d at 159 (explaining that there is no need to protect incriminating statements a defendant gives after a plea agreement is finalized). The court of appeals reversed. It concluded that the State's letter to Myrick "reflect[ed] an ongoing plea-bargaining process" and that Myrick's testimony was "part and parcel of Myrick's reciprocal offer to the State." State v. Myrick, 2013 WI App 123, ¶¶2, 7, 351 Wis. 2d 32, 839 N.W.2d 129. We accepted the State's petition for review.

## II. DISCUSSION

### A. Standard of Review

¶14 The arguments in this case center around the circuit court's discretionary decision to admit Myrick's preliminary hearing testimony. "[W]e will uphold a circuit court's decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." State v. Novy, 2013 WI 23, ¶36, 346 Wis. 2d 289, 827 N.W.2d 610. In order to determine whether the circuit court applied the proper legal standard, we must interpret Wis. Stat. § 904.10 and apply that interpretation to the facts of this case. "[S]tatutory interpretation and application . . . present questions of law for our independent review, although we benefit from the previous interpretations of the court of appeals and the circuit court." Id., ¶21.

## B. General Principles

¶15 Plea bargaining plays a central role in our criminal justice system. Lafler v. Cooper, 566 U.S. _, 132 S. Ct. 1376, 1381 (2012) ("criminal justice today is for the most part a system of pleas, not a system of trials"); Missouri v. Frye, 566 U.S. _, 132 S. Ct. 1399, 1407 (2012). This is so because "[e]ffective criminal law administration would be difficult if a large proportion of the charges were not disposed of by guilty pleas." 2 McCormick on Evidence § 266, at 339 (Kenneth S. Broun ed., 7th ed. 2013). Moreover, when properly administered, plea bargaining may benefit the State, defendants and the public as a whole. See Santobello v. New York, 404 U.S. 257, 261 (1971) (discussing the "essential" and "highly desirable" implications of plea bargaining); contra Lafler, 566 U.S. at _, 132 S. Ct. at 1397 (Scalia, J., dissenting) (discussing the "admirable belief that the law is the law, and those who break it should pay the penalty provided").

¶16 In order to promote "the desirable[,] or at least necessary[,] process of plea bargaining," nearly every American jurisdiction has adopted a rule excluding some "admissions made in connection with plea negotiations that do not result in final pleas of guilty." 1 McCormick on Evidence § 160, at 878 (Kenneth S. Broun ed., 7th ed. 2013); see David P. Leonard, The New Wigmore: A Treatise on Evidence § 5.1, at 5:3. Those rules have attempted to balance "the practical need to encourage compromise through plea bargaining against the need for relevant information in criminal cases." Leonard, supra, at 5:73. They

do so by excluding one or more of three types of incriminating statements: (1) judicial confessions, which are incriminating admissions made in court, such as a defendant's testimony in a prior hearing or different proceeding; (2) guilty pleas and "statements made in connection with [a defendant's] offer to and acceptance by the trial court"; and (3) admissions made in connection with plea bargaining, which usually take place during negotiations with a prosecutor. 1 McCormick, supra, at 877-78.

¶17 This case requires us to determine whether the Wisconsin rule, which excludes "[e]vidence of statements made in court . . . in connection with . . . an offer . . . to plead guilty," prohibits the use of incriminating testimony a defendant gave in order to keep the possibility of a plea bargain open. Wis. Stat. § 904.10.

¶18 We begin our interpretation with the plain language of the statute. Wis. Indus. Energy Group, Inc. v. Pub. Serv. Comm'n of Wis., 2012 WI 89, ¶15, 342 Wis. 2d 576, 819 N.W.2d 240; Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶20, 309 Wis. 2d 541, 749 N.W.2d 581. "If the meaning of the statute is plain, we ordinarily stop the inquiry." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. And, because "[c]ontext is important to meaning," we interpret statutory

8

language "in the context in which it is used; not in isolation but as part of a whole . . . to avoid absurd or unreasonable results." Id., ¶46. "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation." Id.

C. Wisconsin Stat. § 904.10

¶19 In order to "allow for free and open discussion between the prosecution and defense during attempts to reach a compromise" and "to promote the disposition of criminal cases by compromise," Wis. Stat. § 904.10 excludes evidence of offers to plead guilty. Nash, 123 Wis. 2d at 159. That statute provides in full as follows:

> Evidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.

§ 904.10. The statute "clearly and unambiguously indicates [an] intent to prohibit for any purpose the use of statements made in connection with a guilty plea, later withdrawn, at a subsequent trial." See State v. Mason, 132 Wis. 2d 427, 433, 393 N.W.2d 102 (Ct. App. 1986).

¶20 In order to determine when a defendant made statements in connection with an offer to plead guilty, the court of

9

appeals has adopted the following standard from the federal system:

> The trial court must . . . determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

Nicholson, 187 Wis. 2d at 698 (quoting United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978)).[6]

¶21 This test recognizes that a defendant's offer need not be express or explicit; it can be implied from a defendant's words and conduct. See Norwood, 287 Wis. 2d 679, ¶20. For instance, in Norwood, a defendant wrote a letter to the circuit court judge in which he said that he wanted the judge to

_____

[6] See also United States v. Sayakhom, 186 F.3d 928, 935-36 (9th Cir. 1999) (adopting the Robertson test); United States v. Posey, 611 F.2d 1389, 1390 (5th Cir. 1980) (same); United States v. Kearns, 109 F. Supp. 2d 1309, 1315 (D. Kan. 2000) (same); United States v. Melina, 868 F. Supp. 1178, 1181 (D. Minn. 1994) (same).

The few courts that have questioned Robertson have done so because it does not require negotiations to be with a prosecutor. See United States v. Penta, 898 F.2d 815, 818 (1st Cir. 1990) (concluding that the amended rule does not embrace Robertson's two-tiered test because it encompasses situations that are not true plea negotiations, such as those where the government agent had "no authority to make a deal"); United States v. Jasin, 215 F. Supp. 2d 552, 583-84 (E.D. Pa. 2002) (noting that Robertson was decided under a former version of the rule and that many courts have since held that statements to law enforcement are not protected); but see United States v. Guerrero, 847 F.2d 1363, 1367 (9th Cir. 1988) (applying Robertson to the amended rule); United States v. Ceballos, 706 F.2d 1198, 1203 (11th Cir. 1983) (same). The text of the Wisconsin rule, however, plainly requires that a defendant offer to plead guilty to a prosecutor or the court.

sentence him and place him in a facility with the care of "mental doctors" rather than go to trial. Id., ¶13. He wrote, "I don't want the people involved in my case to have to go to trial either. I know they are good people and should not have to suffer for what I've caused to happen, which should not have come into their lives." Id. Upon considering the totality of the circumstances, and recognizing that "the only way he could avoid trial was to enter a plea," the court of appeals held that the letter was an offer to plead guilty or no contest, and therefore inadmissible under Wis. Stat. § 904.10. Id., ¶20.

¶22 On the other hand, the Robertson test recognizes that every confession is not an offer to plead guilty:

> The offer by the defendant must, in some way, express the hope that a concession to reduce the punishment will come to pass. A silent hope, if uncommunicated, gives the . . . prosecutor no chance to reject a confession he did not seek . . . [therefore,] the accused is required . . . to make manifest his intention to seek a plea bargain before he takes the route of self-incrimination.

United States v. Levy, 578 F.2d 896, 901 (2d Cir. 1978). Similarly, Wis. Stat. § 904.10 will not prevent the admission of a defendant's confession that was not made as part of plea negotiations with the district attorney. Nicholson, 187 Wis. 2d at 698.

### D. Parties' Arguments

¶23 The State makes several arguments as to why Wis. Stat. § 904.10 does not prohibit the use of Myrick's preliminary hearing testimony. Its main argument is that Myrick did not

11

make an offer of any kind; rather, he accepted the prosecutor's offer to "allow him to plead guilty" at some point in the future.  Stated otherwise, the State says that the prosecutor offered "to consider making an offer to allow Myrick to plead to a reduced charge if Myrick complied with the conditions of the prosecutor's initial offer."  We reject this interpretation of § 904.10.

¶24 We begin with the observation that only a defendant can offer to plead guilty.  See Jones v. Barnes, 463 U.S. 745, 751 (1983).  Neither counsel, nor the circuit court, and certainly not the prosecutor, can plead guilty on a defendant's behalf.  Id.  It makes sense, then, that Robertson does not distinguish between a defendant's offer to plead guilty and a defendant's actions taken in accord with a prosecutor's suggested terms of a plea bargain.  It also explains why the State does not cite a single case outside of contract law, which it concedes does not apply, in support of the idea that statements a defendant makes while assenting to a prosecutor's proposal are not related to a defendant's own offer to plead guilty.  Put simply, "[p]lea bargaining implies an offer to plead guilty upon condition."  Levy, 578 F.2d at 901.

¶25 Still, the State attempts to transform offering to plead guilty into something that a prosecutor can do.  The State says that Wis. Stat. § 904.10 does not apply when, as here, a prosecutor offers to allow the defendant to plead guilty.  Not only does this ignore the basic principle that a defendant can plead guilty with or without the prosecutor's consent, but it

12

would require us to add the words "to allow" to the statute. Because "[w]e decline to read into the statute words the legislature did not see fit to write," we cannot accept the State's interpretation. Dawson v. Town of Jackson, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316.

¶26 Additionally, the State's argument ignores the reality of plea bargaining and is contrary to the purpose of the statute. We agree with the following assessment of the office of the Wisconsin State Public Defender, which filed an amicus curiae brief in this case:

> [P]lea bargaining does not begin in any uniform or standard way. Some prosecutors make plea offers at the outset of cases, others do not. Some prosecutors put their offers in writing, others do not. Sometimes defense attorneys begin the negotiations by proposing a plea agreement to the prosecutor. These proposals may be in writing, or they may not. Sometimes defense attorneys initiate plea negotiations informally by email or by asking the prosecutor something like, "is there room for a deal here?" or "can we work something out?" It all depends on the individual facts of a case, the strengths and weaknesses of each side, what a defendant wants, and the personalities and strategies of the lawyers involved.
>
> The State's interpretation does not fit in this diverse world of plea bargaining. The statute's goal is to encourage free and open negotiations in all criminal cases. Yet under the State's theory, offers to plead guilty and related statements would be encouraged only if a defendant initiated the negotiations, and discouraged if the State did so. Prosecutors often make the initial plea offer. So why should § 904.10 be construed to discourage negotiations in those cases? What difference does it make who starts the bargaining? The distinction is completely arbitrary.

(citation omitted).

13

¶27 The State also attempts to define "offer" by reference to the comparable federal rule. The State claims that by protecting only offers to the prosecutor to plead guilty, the drafters of the rule intended to protect a narrower swath of statements than Fed. R. Evid. 410, which protects "statement[s] made during plea discussions." Its position, the State says, preserves this "carefully considered departure[]" from the federal rule. See John A. Decker, A New Wisconsin Evidence Code?, 56 Marq. L. Rev. xix, xxi (1973) ("In formulating the Wisconsin rules, uniformity with the Proposed Federal Rules was the overriding principle. . . . Changes from the federal rules were proposed only in instances where legal tradition or legislative enactment seemed substantially compelling or where Wisconsin law was more advanced."). Again, we disagree.

¶28 Wisconsin Stat. § 904.10 was enacted in 1974. At that time, no federal rule on the topic had been enacted. The proposed federal rule, however, provided as follows:

> Evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

Proposed Rules of Evidence, Rule 410, 56 F.R.D. 183, 228-29 (1973).

¶29 Therefore, at the time the Wisconsin rule was enacted, the proposed federal rule did not contain the language upon which the State relies. Instead, it contained similar language

14

about a defendant's "offer to plead guilty," making the State's comparison of the Wisconsin rule to the current federal rule inapposite.

¶30 To be sure, the Wisconsin rule differed from the proposed federal rule in important ways at that time. Relevant for our purposes, the Wisconsin rule specified that a defendant's offer must be to a court or prosecuting attorney. Wis. Stat. § 904.10, Judicial Council Committee's Note——1974 ("is narrowed to apply only to in-court proceedings or offers to the court to plead guilty").[7] The federal rule, by contrast, originally contained no such limitation, and was interpreted by some courts to apply to incriminating statements a defendant made to a person other than the prosecutor. United States v. Penta, 898 F.2d 815, 818 (1st Cir. 1990) ("The pre-amendment language could incorrectly be interpreted to make 'an otherwise voluntary admission to law enforcement officials inadmissible merely because it was made in the hope of obtaining leniency by a plea.'" (citation omitted)).[8] Therefore, the change in the federal rule from "offer to plead guilty" language to "plea discussions with an attorney for the prosecuting authority," had the effect of making the federal rule more similar to the

---

[7] See also State v. Pischke, 198 Wis. 2d 257, 261-62, 542 N.W.2d 202 (Ct. App. 1995) (letter to a police offer not protected because it was not an offer to a court or prosecutor).

[8] E.g., United States v. Herman, 544 F.2d 791, 799 (5th Cir. 1977) (statement to postal inspector protected under the former federal rule); United States v. Brooks, 536 F.2d 1137, 1138-39 (6th Cir. 1976) (same).

15

Wisconsin rule, which expressly provides that offers must be to a court or prosecutor.  See Fed. R. Evid. 410(a)(4); § 904.10; Rachlin v. United States, 723 F.2d 1373, 1376 (8th Cir. 1983) (amendment limited "the rule's application to plea negotiations between the defendant or his attorney" and a prosecutor).  As such, we cannot conclude that the State's comparison to the federal rule supports its argument.

¶31 Finally, the State argues that even if Myrick made an offer, it was not an offer to plead guilty; rather, he offered to debrief the State and testify.  It is certainly true that not every confession is an offer to plead guilty.  For instance, in Nicholson, the court of appeals held that a prosecutor's promise to stand silent at sentencing in exchange for a truthful statement was not a plea negotiation.  Nicholson, 187 Wis. 2d at 698.[9]  However, Wis. Stat. § 904.10 excludes more than just offers to plead guilty; it says that statements made "in connection" with those offers are inadmissible as well.  As we explain in the following section, we have no trouble concluding

---

[9] See also United States v. Morgan, 91 F.3d 1193, 1196 (8th Cir. 1996) (defendant's unconditional cooperation, with no discussion of a plea, in hopes of "bettering [his] situation somewhere down the road" was not part of plea negotiations); United States v. Levy, 578 F.2d 896, 901 (2d Cir. 1978) (defendant's spontaneous and unsolicited cooperation that placed no condition on his admissions was not part of plea negotiations); State v. Crockett, 886 So. 2d 1139, 1148 (La. Ct. App. 2004) (defendant's statements were not part of plea negotiations when the prosecutor "stated on the record that no deals were on the table nor would there ever be for the foreseeable future").

that Myrick testified in connection with his offer to plead guilty.

### E. Application

¶32 We conclude Myrick testified at Winston's preliminary hearing in connection with his offer to plead guilty that the State had not then accepted. The prosecutor's letter discussed "settlement short of trial," which the court of appeals has previously held is an "implicit" way of discussing a plea. Norwood, 287 Wis. 2d 679, ¶20 (defendant's letter to the court that said he wanted to avoid trial and receive a sentence was an offer to plead guilty). The prosecutor's letter said that if Myrick debriefed the State and provided testimony when asked, the State "w[ould] amend the charge regarding the murder of Marquise Harris to one of Felony Murder with an underlying charge of Armed Robbery" and "recommend a period of 12 to 13 years of initial confinement."

¶33 True to the public defender's description of plea bargaining, the remainder of negotiations were not perfectly memorialized in writing. We do know, however, that Myrick began taking the steps the letter said were necessary to keep the possibility of a plea agreement on the table by debriefing the State on the same day the letter was dated. We also know that when the parties appeared back in court four days later, the prosecutor informed the circuit court that an agreement had been reached and that Myrick "was willing to plead guilty to the charge of felony murder." Finally, we know that after Myrick testified at Winston's preliminary hearing, the parties

17

requested a date for entry of a plea. From these circumstances, we conclude that Myrick exhibited a subjective expectation to negotiate a plea, and that Myrick's expectation was objectively reasonable. As a final matter, we note that an exception the court of appeals recognized in Nash does not apply.

¶34 In Nash, the defendant testified at the trials of other defendants as part of a plea bargain. Nash, 123 Wis. 2d at 158. At the time Nash gave that testimony, "the plea agreement had been reached" and there "was to be no more negotiation." Id. at 159-60. A federal district court later vacated Nash's conviction upon his habeas petition. Id. at 156. Nash then stood trial and testified in his own defense. Id. at 158. The State used Nash's earlier testimony from the trials of other defendants for impeachment purposes because his testimony at his own trial was inconsistent with his testimony at the other defendants' trials. Id.

¶35 The court of appeals upheld the use of Nash's prior testimony. It concluded that Wis. Stat. § 904.10 does not exclude statements a defendant makes after plea negotiations are finalized. In so doing, the court of appeals adopted the reasoning of two federal decisions, United States v. Stirling, 571 F.2d 708 (2d Cir. 1978) and United States v. Davis, 617 F.2d 677 (D.C. Cir. 1979). Id. at 159.

¶36 In Stirling, defendant Schulz entered into a written plea agreement that required him to testify before a grand jury. Stirling, 617 F.2d at 730. Schulz testified as required, but after testifying, withdrew from the plea agreement and went to

18

trial, where his grand jury testimony was used against him.  Id.
The United States Court of Appeals for the Second Circuit
affirmed the use of the testimony.  It concluded that there was
no need to exclude Schulz's statements because he made them
"after formalization of a negotiated plea agreement."  Id. at
731.

¶37 Davis adopted the reasoning of Stirling.  In Davis,
the defendant gave incriminating grand jury testimony "after
formalization of a plea agreement but before the defendant ha[d]
entered his plea."  Davis, 617 F.2d at 684.  The United States
Court of Appeals for the District of Columbia Circuit held that
the district court properly admitted the statements because the
testimony came after "all negotiations."  Id. at 685.[10]  As with
Stirling, the court reasoned that "[e]xcluding testimony made
after and pursuant to the agreement would not serve the purpose
of encouraging compromise."  Id.

¶38 Myrick's testimony does not come within exceptions
recognized in Nash, Stirling, or Davis because negotiations were
ongoing when Myrick testified at Winston's preliminary hearing.
The State's letter to Myrick unequivocally informed Myrick that
the State reserved discretion to refuse to amend the charge or
recommend 12 to 13 years initial confinement.  It stated that
"it will be at the discretion of [the] district attorney's

---

[10] See also United States v. Watkins, 85 F.3d 498, 500 (10th
Cir. 1996) ("both the language of, and the policy underlying
[the rule] verify that once a plea agreement is reached,
statements made thereafter are not entitled to the exclusionary
protection of the Rule").

office as represented by the parties named above as to whether the above negotiation will be conveyed to you to settle the above-captioned case short of trial." Additionally, it characterized Myrick's testimony against Winston as "part of this negotiation" and said that it would amend the charge and recommend a reduced sentence "[s]hould we ultimately reach a negotiation."

¶39 The State never amended the charge, and Myrick never entered a plea. Nor did the parties formalize an agreement, as in Stirling and Davis.

¶40 Moreover, Myrick's obligations under the district attorney's written proposal were not limited to testifying at Winston's preliminary hearing for the Harris murder. The proposal required Myrick to "testify truthfully whenever called upon by the State." This presumably referred to Winston's trial for the murder of Harris. It also could have referred to the prosecution of Winston for the murder of Maurice Pulley, referenced above. There is no indication that Myrick had given that testimony at the time of his preliminary hearing testimony against Winston.

¶41 For these reasons, we conclude that there remained an incentive to protect Myrick's testimony given at the preliminary hearing.

### III. CONCLUSION

¶42 We conclude that Wis. Stat. § 904.10 prohibited the use of Myrick's preliminary hearing testimony at trial. While it is true that the prosecutor made the initial overture to

20

begin the plea bargaining process, Myrick offered to plead guilty and testified at the preliminary hearing in connection with that offer. We reach this conclusion not out of disregard for the distinction between offer and acceptance, but because only a defendant can offer to plead guilty. We also note that a defendant's offer to plead guilty does not need to be express or explicit; it can be implied from conduct. See Norwood, 287 Wis. 2d 679, ¶¶13, 20; Nicholson, 187 Wis. 2d at 698. In addition to reflecting the plain language of the statute, our conclusion is consistent with the statute's purpose, which is to encourage free and open discussion between prosecutor and defendant during plea negotiations. See Nash, 123 Wis. 2d at 159. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

21

¶43 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I would read the Wisconsin rule regarding the admissibility of defendant statements made in connection with plea bargaining[1] the same as the federal rule[2] rather than continue to split hairs over the distinction between Wisconsin's "offer" rule and the federal "discussions" rule. In my view, once plea negotiations have started, all statements made in connection with the negotiations should be excluded at trial, even if the negotiations break down.[3]

¶44 Other states with similar textual discrepancies between the federal and state rule have adopted the federal test.[4] I espouse a similar approach.

¶45 For the foregoing reasons, I write separately.

---

[1] Wis. Stat. § 904.10.

[2] Fed. R. Evid. 410.

[3] See United States v. Olson, 450 F.3d 655, 681 (7th Cir. 2006) ("Statements made in the course of plea discussions with a prosecutor generally are inadmissible under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410.").

[4] See, e.g., People v. Tanner, 45 Cal. App. 3d 345, 351-52 (4th Dist. 1975) (construing the evidentiary rule to cover "admissions made in the course of bona fide plea bargaining negotiations" despite limited statutory text); State v. Lavoie, 551 A.2d 106, 108 (Me. 1988) ("Whether a statement ought to be excluded under [Maine Rule of Evidence] 410 depends on whether the discussion in which the statement was uttered may properly be characterized as a plea negotiation.") (quoting State v. Little, 527 A.2d 754, 756 (Me. 1987)).

1

¶46 MICHAEL J. GABLEMAN, J. *(dissenting).* I agree with the majority that Myrick made an offer to the State to plead guilty. However, unlike the majority, I believe that the exception in State v. Nash, 123 Wis. 2d 154, 366 N.W.2d 146 (Ct. App. 1985), applies to this case because a final plea agreement was reached. As a result, Myrick's testimony was properly introduced at trial.

¶47 The established rule from Nash is that Wis. Stat. § 904.10 does not bar testimony given after a plea agreement has been finalized. The majority maintains that Nash does not apply in this case because "negotiations were ongoing when Myrick testified at Winston's preliminary hearing."[1] However, the majority also goes on to observe that "the prosecutor informed the circuit court that an agreement had been reached"[2] over a month prior to Myrick's testimony at Winston's preliminary hearing. These two statements cannot be reconciled. Put simply, the majority cannot have its cake and eat it, too— either the plea negotiations were ongoing or negotiations were concluded. The majority errs when it concludes that plea negotiations were ongoing at the time Myrick gave his testimony when, in fact, those negotiations had concluded. The State described its arrangement with Myrick as a "plea agreement" on numerous occasions. Moreover, a significant portion of Myrick's brief to this court is devoted to arguing that a plea agreement

---

[1] Majority op., ¶38.

[2] Majority op., ¶33.

1

existed. I would therefore hold that Myrick's testimony was properly admitted pursuant to the long-established rule in Nash.

## I. DISCUSSION

¶48 In Nash, the defendant provided testimony against others pursuant to a plea agreement with the State. 123 Wis. 2d at 149-50, 160. Nash later withdrew from his agreement and decided to proceed to trial, and his earlier testimony was admitted against him. Id. at 158. Nash argued that his testimony was inadmissible under Wis. Stat. § 904.10 because it was given "in connection with" his guilty plea, but the court of appeals disagreed, concluding that Wis. Stat. § 904.10 does not bar testimony provided after a plea agreement has been reached. Id. at 158-60.

¶49 The court of appeals in Nash based its reasoning in part on two federal cases, United States v. Stirling, 571 F.2d 708 (2d Cir. 1978), and United States v. Davis, 617 F.2d 677 (D.C. Cir. 1979). In these cases, the defendants entered into plea agreements that required them to testify before grand juries, and the defendants withdrew from the agreements after testifying but before entering guilty pleas. Both Stirling and Davis concluded that the statements were not barred by Fed. R. Crim. P. 11(e)(6), which contained identical language to Fed. R. Evid. 410. See Stirling, 571 F.2d at 730 n.17, 731-32; Davis, 617 F.2d at 682 n.13, 686. The federal courts reasoned that, notwithstanding the fact that neither defendant had entered a guilty plea, "exclusion of the grand jury testimony would not serve the purpose of the rule because the testimony was given

2

after all of the negotiations had been completed and the plea agreement was formalized." Nash, 123 Wis. 2d at 159.

¶50 In Nash, the court of appeals concluded that the analysis in Stirling and Davis applies with equal force in Wisconsin, reasoning that the purpose of Wis. Stat. § 904.10 "is the same as the purpose of the federal rule——to promote the disposition of criminal cases by compromise." Id. The court of appeals explained that when a plea agreement has been reached, there is "no more negotiation and, therefore, no more reason to promote negotiation." Id. at 160. This is particularly true when, like Myrick's testimony, the evidence in question is testimony delivered under oath, because unlike statements made in connection with plea negotiations, testimony given under oath is presumed truthful. Id. We offer protection to defendants during plea negotiations to incentivize truthfulness, but such protection is unnecessary when the defendant voluntarily agrees to testify under oath.

¶51 Like the defendants in Stirling, Davis, and Nash, Myrick entered into a plea agreement that required him to testify against another. Myrick later breached this agreement and decided to go to trial, and like these other defendants, his prior testimony was admitted against him. The purpose of Wis. Stat. § 904.10 is not served by excluding Myrick's testimony, because he had already formalized an agreement with the State and agreed to plead guilty. Likewise, there was no need to encourage Myrick to testify truthfully, because he had already

3

agreed to provide truthful testimony as part of his plea agreement,[3] and his testimony was delivered under oath.

¶52 The majority relies on the terms of the State's proffer letter to argue that Myrick had not reached a formalized plea agreement with the State when he testified at Winston's preliminary hearing.[4] To address this argument, we must look to the terms of the State's proffer letter and the circumstances surrounding Myrick's testimony at Winston's preliminary hearing.

¶53 On July 2, 2010, four days before Myrick's case was scheduled for trial, the State sent Myrick a proffer letter with "an offer of resolution." The letter explained that the State sought "debriefing and testimony in any case involving criminal conduct of Justin Winston." The letter proposed an agreement in which Myrick testified against Winston "in exchange for" the State's recommendation of a reduced sentence. According to the terms of the letter, the State would remain free to pursue "any or all investigative leads derived" from the debriefing, and after the debriefing was concluded, "it will be at the discretion of said district attorney's office . . . as to whether the above negotiation will be conveyed to you to settle the above-captioned case short of trial." The letter also described Myrick's testimony against Winston as something that

---

[3] The State's proffer letter to Myrick explained that if Myrick debriefed the State and the State then decided to enter into a plea agreement with Myrick, the State would recommend a reduced sentence "in exchange for" Myrick's "truthful testimony" against Winston.

[4] See majority op., ¶38.

4

would occur "should we ultimately reach a negotiation in this case."

¶54 Myrick provided the State's requested debriefing on the same day the State sent its proffer letter. On July 6, 2010, the morning opening arguments were scheduled to begin in Myrick's trial, the State informed the circuit court that a "resolution had been reached" between the parties. In response, the circuit court discharged the jury and scheduled the case for a status hearing.

¶55 On August 13, 2010, Myrick testified against Winston at Winston's preliminary hearing. Shortly thereafter, on September 9, 2010, and February 24, 2011, the parties appeared for status hearings before the circuit court and requested that the case be set over pending Myrick's testimony at Winston's trial. The parties then informed the circuit court on May 23, 2011, that they wished to schedule a date for entry of a plea after Winston's trial had concluded. At the plea hearing two months later, the parties told the circuit court that Myrick had refused to testify in Winston's trial and, as a result, Myrick would not be entering a plea and the parties would proceed to trial.

¶56 The facts in this case clearly demonstrate that Myrick had entered into a formalized plea agreement with the State that required his testimony in Winston's trial. I agree with the majority that there was no formal plea agreement when the State wrote its letter; rather, the letter simply explained that the State wished to debrief Myrick and, based on the information he

5

provided, it may choose to enter a plea agreement with him in which he would testify against Winston "in exchange for" a reduced sentence. This comports with common sense, as the State would have no incentive to offer an agreement to Myrick until it ascertained what Myrick knew and would be willing to testify to under oath. Therefore, the State indicated in the letter that "[a]fter the substance of the proffer/debriefing is conveyed to the Milwaukee County District Attorney's Office . . . it will be at the discretion of said district attorney's office . . . as to whether the above negotiation will be conveyed to you to settle the above-captioned case short of trial." The majority confuses the negotiation process——which continued through Myrick's debriefing——with the terms of Myrick's finalized plea agreement, which included his testimony at Winston's preliminary hearing in exchange for a reduced sentence.

¶57 In other words, the letter recited the terms of a possible future plea agreement. Myrick would testify for the State "should we ultimately <u>reach</u> a negotiation." (Emphasis added). There is a difference between the <u>process</u> of negotiation, which may or may not result in an agreement, and <u>reaching</u> a negotiation, which is an agreement by another name. Because the State ultimately "reach[ed] a negotiation" with Myrick, Myrick in turn testified for the State.

¶58 Although there was no further written correspondence between the State and Myrick, it is obvious that the State ultimately opted to enter into a formalized plea agreement with Myrick after his debriefing, because pursuant to the terms of

6

the proffer letter, Myrick later testified against Winston, and the parties scheduled a date for entry of a plea. If there had been no plea agreement, the parties would not have scheduled a plea hearing, and Myrick would not have testified for the State. As Myrick's brief to this court makes clear, even he agrees that a plea agreement had been reached:

> Why would Myrick, in the middle of a first degree intentional homicide case and after exercising his right to remain silent for over one year, make incriminating statements in open court, unless he had the benefit and security of a "plea agreement?"

A review of the record shows that the existence of a plea agreement was never in doubt. For example, when the parties argued before the circuit court as to whether Myrick's testimony should be admitted, Myrick's counsel explained, "the only reason [Myrick testified] was because of the agreement he made pursuant to the proffer letter . . . ." Likewise, if the parties had not reached an agreement, the State would not have informed the circuit court on the morning of trial, after a jury had already been selected, that "a resolution had been reached" between the parties. Absent a plea agreement, the parties would have had no apparent reason to delay scheduling a trial through two subsequent status hearings and then specifically request a plea hearing on a date following Winston's trial. Nor is it likely that the circuit court would have discharged the jury and scheduled a status hearing or agreed to schedule a plea hearing without a finalized plea agreement.

¶59 The State also referred to the plea agreement between the parties in describing what testimony it wished to read to

the jury: "Where I am gonna end is [line] 25, because then it goes into the plea agreement and what the plea agreement was, and that he had a plea agreement to testify." The circuit court responded, "No, we're not getting into any plea agreement." The State also asked Myrick's counsel if he wanted the jury to hear that "[w]e would recommend 12 to 13 years and he was willing to plead guilty to the charge of felony murder?" Myrick's counsel replied, "I -- excise the portion about the plea deal, fine." Later, the State claimed, "The jury will know the reason he is giving testimony is pursuant to a proffer where he has a – agreed to plead guilty to felony murder and do 13 years in prison." In sum, upon review of the record and the parties' briefs to this court, there is no question that Myrick's testimony at the preliminary hearing was given pursuant to the terms of a finalized plea agreement with the State.

¶60 The majority's position is that, while Myrick made an offer to plead guilty, that offer never materialized into a formal plea agreement and remained in the negotiation phase at the time Myrick testified at the preliminary hearing.[5] This position raises the obvious question: at what point, under the majority's reasoning, would the parties' negotiations have transformed into a plea agreement? The majority provides no clear guidelines to indicate when the exception in Nash would apply. Although the majority notes that "the State never amended the charge, and Myrick never entered a plea,"[6] this

_____

[5] See majority op. ¶¶32, 38.

[6] Majority op. ¶39.

8

clearly cannot be the baseline for when a plea agreement has been reached, because in both Stirling and Davis——the federal cases relied upon in Nash——the defendants never entered a guilty plea but still testified in accordance with a plea agreement. It cannot be reasonably argued that a plea agreement exists only once a defendant has formally entered a guilty plea. Entry of a guilty plea is a condition of a plea agreement, but the agreement must exist prior to the actual plea——otherwise, how would the defendant know whether to plead? The majority is left concluding that there was no plea agreement, without ever indicating how to determine whether a plea agreement exists. In this case, the State expressly referred to a plea agreement, Myrick maintains there was a plea agreement, and the circuit court believed there was a plea agreement. If this is not enough to conclude there was an agreement, it is difficult to fathom what is.

¶61 I also note that the majority's rationale may have far-reaching practical implications for future cases. No great imaginative leap is required to envision a scenario where the State elicits testimony from a defendant pursuant to a proffer letter like Myrick's, only to later claim that the parties never reached an agreement and refuse to fulfill its end of the bargain. If the majority is correct that no plea agreement existed between the parties, nothing would have prevented the State from refusing to recommend a reduced sentence even if Myrick had testified at Winston's trial. This preposterous result is the natural extension of the majority's reasoning, but

9

its unfairness is self-evident. Although this cannot possibly be the law, the majority opinion does not merely invite such a conclusion; the majority opinion would, in fact, require it.[7]

¶62 The established rule from <u>Nash</u> is that testimony provided pursuant to the terms of a plea agreement is not barred by Wis. Stat. § 904.10. The facts in this case——from the State's proffer letter and the parties' statements to the circuit court, to the circuit court's own comments and its decision to discharge the jury and later schedule a plea hearing——all unequivocally indicate that Myrick's testimony was delivered as part of a finalized plea agreement with the State and was admissible under <u>Nash</u>. For this reason, I respectfully dissent from the majority opinion.

¶63 I am authorized to state that Justices DAVID T. PROSSER and ANNETTE KINGSLAND ZIEGLER join this dissent.

---

[7] Moreover, even if the majority is correct in its assertion that Myrick's testimony should not have been admitted during the State's case-in-chief, it is not at all clear that the testimony will be inadmissible in Myrick's new trial following this decision. The State's proffer letter clearly stated, "nothing shall prevent the State . . . from using the substance of the proffer/debriefing at sentencing, or for any purpose at trial for impeachment or in rebuttal to testimony of your client . . . ."