**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Herbert Hoover AKIN, Defendant-Appellant.**

**No. 28855.**

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1970.

Jerome C. Ables, South Pittsburg, Tenn. (court appointed) for Herbert Hoover Akin.

Wayman G. Sherrer, U. S. Atty., R. Macey Taylor, L. Scott Atkins, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from a jury conviction for unlawfully receiving and possessing goods transported in interstate commerce.[1] Appellant contends that an incriminating statement obtained from him by the FBI was impermissibly ad-

1. 18 U.S.C. § 659 prohibits, *inter alia,* knowingly receiving or possessing goods unlawfully taken from any vehicle moving in interstate commerce.

mitted against him in his trial because he was not given a proper *Miranda* warning.[2] After a careful review of the record, we have concluded that appellant was not entitled to *Miranda* warnings because he was not "in custody" at the time he was questioned.

Because of the difficulty of formulating a precise definition of "custodial interrogation" this Court takes a "case-by-case" approach to resolving questions of custodial interrogation. Agius v. United States, 5th Cir. 1969, 413 F.2d 915, 918. A particularized rendition of the facts in each case is therefore of utmost importance.

This case arises out of the theft of certain television sets bound for Richmond, Virginia, aboard a Louisville & Nashville Railroad car. On February 2, 1969, this rail shipment was broken into near Sherwood, Tennessee, approximately fifteen miles from the Alabama border. FBI agents began investigation of the theft, and in the course of their investigation traveled to Stephenson, Alabama, about twenty-five miles from the point at which the break-in occurred. In Stephenson, the agents went to the appellant's place of business, a TV repair service known as "Herb's TV," to inquire whether appellant had any knowledge about the stolen television sets. At this time, the investigation appeared to be of a general nature; no warrant existed for appellant's arrest and no charges had been made against him. When the agents first arrived at "Herb's TV," appellant was not in, but he subsequently drove into the parking lot in front of his store. The agents approached him, identified themselves, told him the purpose of their inquiry, and asked appellant to talk with them about the missing sets. Appellant agreed, and the agents asked him to sit with them in the Bureau car. Before asking appellant any questions, one of the agents gave appellant what purported to be a *Miranda* warning, but which failed to comply exactly with the requirements of *Miranda*.[3] After receiving this warning appellant agreed to talk orally with the agents about his knowledge of the existence or whereabouts of the TV sets.

Appellant then proceeded to tell the agents that a man named Bobby Joe Roberts had come to his shop and offered to sell him three TV sets at half the dealer's cost. Ultimately he and Roberts agreed to trade the sets for a used 1958 Cadillac, which appellant valued at $100. Appellant further stated that a few days later he discovered that the TV sets came from the Railroad "heist" in Sherwood and he became afraid of the sets and sold one and took the other two to his wife's niece in South Pittsburg, Tennessee. Appellant agreed to take the agents to South Pittsburg to retrieve these two sets, and that same day he and the agents traveled together to South Pittsburg and recovered the sets. When they returned to Stephenson, one of the agents wrote out appellant's statement and appellant signed it. That night appellant went alone to Chattanooga to recover the

2. We agree that the warning received did not comply with all the requirements of *Miranda*. The FBI agent who questioned appellant testified that he paraphrased the warning from a printed card essentially as follows:

I told Mr. Akin before we asked him anything he had to understand his rights, which meant he did not have to talk to us and that anything he said could be repeated in a court of law, that he had a right to talk to a lawyer of his choice before we asked him any questions and that he had a right to have his lawyer with him during questioning; and that if he couldn't afford

a lawyer, one would be appointed for him later on, if the matter went to court; I also told him if he wanted to answer questions now and stop later on that was permissible.

According to this Court's decision in Windsor v. United States, 5th Cir. 1968, 389 F.2d 530, merely telling a person that he can speak with an attorney or anyone else before he says anything is not the same as informing him that he is entitled to the presence of an attorney during interrogation and that one will be appointed if he cannot afford one.

3. *See* note 2, *supra*.

third set and the following day he returned to Stephenson and turned that set over to the FBI.

 The only basis suggested by appellant for finding that there was "custodial interrogation" in this case is that the FBI did give some warning to appellant prior to questioning him. Thus, appellant asks, "If this were *not* a custodial interrogation, why would the agents give warnings?" We cannot accept appellant's suggestion. To rule that an FBI agent's extra-cautious efforts to inform a person of his constitutional rights converts an otherwise non-custodial situation into "custodial interrogation" could easily work to defeat one of the Supreme Court's main objectives in *Miranda,* the objective of encouraging law enforcement agencies to develop ways of protecting individual rights that are in harmony with effective law enforcement. We conclude, therefore, that a custodial situation cannot be created by the mere giving of modified *Miranda* warnings.

To determine the custodial interrogation question, we must look rather to the guidelines dictated by the Supreme Court in *Miranda* itself. This Court recently capsulated the features cited by the Supreme Court in *Miranda* to characterize its conception of "custodial interrogation":

> The "salient features" of the cases decided in *Miranda* were "incommunicado interrogation of individuals in a police-dominated atmosphere." * * * The *Miranda* procedures are intended to combat the effect which such a "compelling atmosphere" * * * has upon the exercise of constitutional rights. They are not meant to preclude law enforcement personnel from performing "their traditional investigatory functions," * * * such as "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process * * *." · Unless restraint of an individual by law enforcement personnel is "signifi-

cant," *Miranda* warnings are not required.

United States v. Montos, 5th Cir. 1970, 421 F.2d 215, 222–223; *see also* United States v. Hall, 2d Cir. 1969, 421 F.2d 540, cert. denied, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970).

 In our case, there is a complete absence of evidence of any restraint, let alone "significant restraint." It appears that appellant was free to go at all times. The FBI agent further testified at trial that no force was used in questioning, nor were any promises made to induce appellant to give any information. In view of the absence of evidence to support a finding of custodial interrogation, and the early stage of investigation at which the questioning of appellant occurred, we conclude that these facts fail to establish that a custodial situation existed, and we therefore affirm.

Affirmed.