COURT OF APPEALS
DECISION
DATED AND FILED

May 28, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2192-CR**

Cir. Ct. No. 2017CF42

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

DANIEL J. REJHOLEC,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Reversed.*

Before Gundrum, P.J., Neubauer, and Grogan, JJ.

¶1 GROGAN, J. This matter is before us on appeal for the second time, this time on the State's appeal. Previously, we reversed the circuit court's order denying Daniel J. Rejholec's motion to suppress certain incriminating statements made during the course of an in-custody interrogation related to the

alleged sexual assault of Natalie,[1] a minor. *See State v. Rejholec*, 2021 WI App 45, 398 Wis. 2d 729, 963 N.W.2d 121. On remand, the circuit court granted Rejholec's motion to withdraw his plea, and the case was set to proceed to trial. After the State indicated it intended to use inculpatory statements Rejholec made during allocution at the sentencing hearing following his now-withdrawn plea, Rejholec filed a motion asking the circuit court to prohibit the State from using his sentencing statements. The circuit court, relying largely on WIS. STAT. § 904.10, granted the motion, and the State appealed. Because we agree with the State's contention that § 904.10 does not preclude admission of Rejholec's allocution statements under these circumstances and because there is no legal basis supporting the circuit court's alternate rationales for its decision, we reverse.

## I. BACKGROUND

¶2 In January 2017, Bill contacted the Sheboygan Police Department after his cognitively impaired fourteen-year-old daughter, Natalie, reported that Rejholec had engaged in sexual conduct with her on multiple occasions. An investigation, which led to an in-custody interrogation with a Sheboygan Police Department detective, resulted in the State charging Rejholec with violating WIS. STAT. §§ 948.02(2) (sexual assault of a child under sixteen years of age), 948.10(1) and (1)(a) (exposing intimate parts), and 948.11(2)(a) (exposing a child to harmful material). Rejholec sought suppression of certain incriminating statements made during the course of that interrogation based on alleged violations

---

[1] We use pseudonyms for the victim and her father to protect the victim's privacy. *See* WIS. STAT. RULE 809.86 (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

of ***Miranda v. Arizona***[2] and ***State ex rel. Goodchild v. Burke***.[3]  *See **Rejholec***, 398 Wis. 2d 729, ¶2.  The circuit court denied the motion, and Rejholec ultimately entered a no contest plea.  ***Id.***, ¶5.  At the ensuing sentencing hearing, Rejholec exercised his WIS. STAT. § 972.14 right of allocution and made the following inculpatory statements:

> I would like to -- everyone to know that I'm truly sorry for what happened between [Natalie] and I.  I know that I'm the adult, and I now -- I understand that I should have, shouldn't have allowed this to happen.  This does not take away at all *my responsibility for what I did to* [Natalie] and that I will fully understand I need to be held accountable and punished.
>
> I also want the judge to consider that I went 53 years of my life and always made good decisions *until this*.  I believe that I'm a good person, and you can rest assured that *nothing like this has ever happened before*.
>
> I want the judge to know I will accept any help or counseling *so I can understand why I did this*.  I've never had any sort of sexual attraction to children.  *It's hard for me to understand why I did this*.  *This wasn't planned out in any way, shape, or form*.  That's it.

(Emphases added.)  The circuit court sentenced Rejholec to twelve years of initial confinement and ten years of extended supervision.

¶3     Rejholec thereafter filed an appeal in which he challenged the conviction on the ground that the circuit court erred in denying his suppression motion.  *See **Rejholec***, 398 Wis. 2d 729, ¶3.  In that appeal, we agreed with the circuit court's conclusion that Rejholec's inculpatory statements during the interrogation were voluntary and that there had been no ***Goodchild*** violation, but

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[3] ***State ex rel. Goodchild v. Burke***, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

3

we ultimately "conclude[d] that Rejholec's *waiver* (**Miranda** challenge) became invalid when his interrogator misrepresented his right to silence, his right to counsel, and his right to testify at trial." **Rejholec**, 398 Wis. 2d 729, ¶3. Accordingly, we reversed the judgment of conviction and remanded the matter to the circuit court "with directions that [it] grant Rejholec's suppression motion[,]" and we also stated that the circuit court could "entertain a motion" allowing Rejholec to withdraw his no contest plea. *Id.*, ¶¶3, 35.

¶4     On remand, the circuit court entered an order vacating Rejholec's conviction and granting Rejholec's suppression motion. The court also granted Rejholec's motion to withdraw his no contest plea. Following the plea withdrawal, Rejholec filed a motion seeking to prohibit the State from introducing the inculpatory statements he made during the sentencing hearing in future proceedings. In the motion, Rejholec noted that "[t]he State has … indicated that it likely intends to use [his] sentencing statement … in its case-in-chief if the case proceeds to trial" and asserted that "[i]t does not appear that the Wisconsin appellate courts have directly answered the question of whether the State can use a defendant's admissions during allocution at sentencing at a subsequent jury trial in the same case after a conviction has been reversed."

¶5     Rejholec raised several arguments in support of his motion regarding use of his inculpatory allocution statements at a subsequent trial. First, he cited to our supreme court's decisions in **State v. Crowell**, 149 Wis. 2d 859, 440 N.W.2d 352 (1989), and **State v. Greve**, 2004 WI 69, 272 Wis. 2d 444, 681 N.W.2d 479, in which the defendants had provided inculpatory statements in the preparation of a court-ordered presentence investigation report (**Crowell**) and a defense-prepared presentencing memorandum (**Greve**). *See Crowell*, 149 Wis. 2d at 862; **Greve**, 272 Wis. 2d 444, ¶3-5. In each of those cases, the State sought to introduce the

defendant's respective inculpatory statements at subsequent trials—in *Crowell*, following the withdrawal of the defendant's guilty plea, and in *Greve*, following a reversal of Greve's conviction on appeal. *Crowell*, 149 Wis. 2d at 862-63; *Greve*, 272 Wis. 2d 444, ¶5. The supreme court reached opposite conclusions in those cases, holding in *Crowell* that WIS. STAT. § 972.15 prohibited introduction of the defendant's inculpatory statements, *Crowell*, 149 Wis. 2d at 861, but that because that statute did not apply to defense-prepared presentencing memoranda, the defendant's inculpatory statements *were* admissible in *Greve*, 272 Wis. 2d 444, ¶2.

¶6      In regard to these cases, Rejholec's brief in support of his motion did little more than summarize their respective holdings and note that Justice David T. Prosser, in his *Greve* dissent, stated that "the lead opinion dodges the obvious question whether a statement made by a defendant *inside* the courtroom at a sentencing hearing is protected from use in a new trial" and that "[d]etermining that an in-court statement is not protected would render the statutory right of allocution meaningless for some defendants." *See Greve*, 272 Wis. 2d 444, ¶¶65-66 (Prosser, J., dissenting). Presumably, Rejholec's rationale for citing these cases was to establish that certain inculpatory statements are inadmissible following the withdrawal of a guilty or no contest plea or the vacatur or reversal of a conviction.

¶7      Rejholec next pointed to WIS. STAT. § 904.10 as a potential legal basis for granting his motion, arguing that it "may very well provide protection for defendants from such use of their sentencing statements" following a reversal of the conviction from which the sentencing statements flowed. Section 904.10 provides that:

> Evidence of a plea of guilty, later withdrawn, or a plea of
> no contest, or of an offer to the court or prosecuting

> attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.

Rejholec asserted that § 904.10's final sentence—despite "not specifically stat[ing] that sentencing statements are included in those that are not admissible"—nevertheless could be read to include such statements because they "are 'statements made in court … in connection with any of the foregoing pleas[.]'" (Omission in original.) Rejholec, however, failed to cite any case law specifically addressing § 904.10 before the circuit court.[4]

¶8      Rejholec also argued that the State should be precluded from introducing his inculpatory allocution statements for policy reasons. Specifically, he argued that a defendant at sentencing has the goal of "provid[ing] as much mitigating information to a court as possible" because such information "may positively impact the court's sentencing decision" and that mitigating information often consists of "a defendant's acceptance of responsibility, apologies, [and] insight and remorse[.]" Here, he says, the circuit court's initial denial of his suppression motion that was ultimately reversed in his first appeal "clearly played a substantial role in [his] decision to enter his no contest plea" and that at sentencing—which occurred prior to the appellate reversal—he was essentially

---

[4] In fact, counsel suggested at the hearing on Rejholec's motion that it appeared that "we're essentially working on a blank slate" in regard to whether allocution statements must be precluded following withdrawal of a plea or reversal of a conviction from which the allocution statements stemmed. As will be explained below, however, there *are* multiple Wisconsin cases interpreting and applying WIS. STAT. § 904.10, which a simple review of the statutory annotations reveals. These cases also are on point as to the meaning of "in connection with" as used in § 904.10.

6

required to "choose between exercising [his] statutory right of allocution in order to try to obtain a better sentence and abstaining from making any meaningful statement while hoping that he *might* later obtain a reversal of the conviction."

¶9      Although the State did not file a written brief in response to Rejholec's motion, it argued at the ensuing motion hearing that ***Greve*** "is extremely on point" because, it said, like in ***Greve***, where out-of-court inculpatory statements made in preparing a defense sentencing memorandum were deemed admissible, in-court allocution statements such as Rejholec's are likewise voluntary statements made to provide mitigating information for sentencing purposes and should therefore likewise be deemed admissible.  The State further asserted it would be "logically … conflict[ing]" to conclude that in-court allocution statements, such as the ones at issue here, are "not admissible when a [defense] presentencing memorandum," such as the one at issue in ***Greve***, was admissible.  According to the State, under both circumstances—in-court allocution statements and statements made in the course of preparing a defense sentencing memorandum—the defendant has made "voluntary statements."  And, in regard to WIS. STAT. § 904.10, the State argued that that statute applied to "plea negotiation statements" but that here, the "plea was done" and the inculpatory statements were not made as "part of a plea."

¶10     Ultimately, the circuit court granted Rejholec's motion and identified multiple reasons for doing so.  As to WIS. STAT. § 904.10, the court indicated it believed the statutory language was "pretty clear" in regard to its prohibition against introduction of Rejholec's allocution statements.  The court also reasoned that prohibiting the State from introducing Rejholec's allocution statements was appropriate based on its belief that "the goal of a plea withdrawal is to put the person who entered the plea in the position they were in before they

entered the plea." Finally, the court explained it believed Rejholec's allocution statements were "contaminated" by the interrogation statements this court ordered suppressed in Rejholec's earlier appeal, *see* **Rejholec**, 398 Wis. 2d 729, ¶35, and that allowing Rejholec's allocution statements to be introduced against him "would be very prejudicial" and "a miscarriage of justice."

¶11    The State now appeals pursuant to WIS. STAT. § 974.05(1)(d)2.

## II. STANDARD OF REVIEW

¶12    We review a circuit court's discretionary decision to exclude evidence under the erroneous exercise of discretion standard, and "we will uphold a circuit court's decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." **State v. Novy**, 2013 WI 23, ¶¶21, 36, 346 Wis. 2d 289, 827 N.W.2d 610. "[S]tatutory interpretation and application … present questions of law" this court reviews de novo. **Id.**, ¶21.

## III. DISCUSSION

¶13    Although the circuit court cited multiple reasons for granting Rejholec's motion to preclude the State from introducing evidence of his inculpatory allocution statements, its primary decision for doing so was seemingly based on its belief that WIS. STAT. § 904.10 required it to do so. In his appellate brief, Rejholec primarily focuses his arguments on why the court was correct in reaching this conclusion. Accordingly, we begin our review by construing § 904.10 and its applicability to Rejholec's allocution statements.

8

¶14    Pursuant to what is by now a well-known framework, we review questions of statutory interpretation de novo, *State v. Lickes*, 2020 WI App 59, ¶16, 394 Wis. 2d 161, 949 N.W.2d 623, *aff'd* 2021 WI 60, 397 Wis. 2d 586, 960 N.W.2d 855, and we interpret statutes using the well-established methodology articulated in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.   When reviewing statutory language, we "ascertain and apply the plain meaning of the statutes as adopted by the legislature." *White v. City of Watertown*, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61.   "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Kalal*, 271 Wis. 2d 633, ¶¶45-46 (citation omitted) ("Context is important to meaning.   So, too, is the structure of the statute in which the operative language appears.   Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶15    A statute is unambiguous if the interpretative process set forth above "'yields a plain, clear statutory meaning[.]'" *Id.*, ¶46 (citation omitted).   If a statute "is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.*   "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47.   "[D]isagreement about the statutory meaning" "is not enough" to render a statute ambiguous. *Id.*   Rather, "the test for ambiguity examines the" statutory language "to determine whether 'well-informed persons *should have*

become confused,' that is, whether the statutory … language *reasonably* gives rise to different meanings." ***Id.*** (quoted source omitted; omission in original).

¶16     As previously noted, WIS. STAT. § 904.10 provides that:

> Evidence of a plea of guilty, later withdrawn, or a plea of no contest, or of an offer to the court or prosecuting attorney to plead guilty or no contest to the crime charged or any other crime, or in civil forfeiture actions, is not admissible in any civil or criminal proceeding against the person who made the plea or offer or one liable for the person's conduct. Evidence of statements made in court or to the prosecuting attorney in connection with any of the foregoing pleas or offers is not admissible.

At first glance, § 904.10's reference to statements made "in connection with" withdrawn guilty pleas, no contest pleas, and offers to plea is seemingly broad—broad enough to arguably include allocution statements such as those at issue here that arose following the entry of one of the aforementioned pleas. We need engage in very little statutory interpretation in this case, however, because prior cases construing and applying § 904.10 confirm that the phrase "in connection with" has a much narrower—and in fact, quite precise—meaning.

¶17     In ***State v. Nash***, one of the earlier cases construing WIS. STAT. § 904.10, we considered whether incriminating testimony Nash provided during the trials of co-defendants—testimony which he provided as part of a guilty plea that was later withdrawn following lengthy litigation—was admissible as impeachment evidence at Nash's own trial when the testimony he gave conflicted with the testimony he had previously given in his co-defendants' trials. ***State v. Nash***, 123 Wis. 2d 154, 156-58, 366 N.W.2d 146 (Ct. App. 1985). On appeal, Nash argued that § 904.10 rendered the testimony he gave in the co-defendants' trials inadmissible because that testimony "was given 'in connection with' his guilty plea which was subsequently withdrawn[.]" ***Nash***, 123 Wis. 2d at 158.

¶18     After noting that "this specific issue has not been addressed in Wisconsin," we turned to two federal decisions, *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978), *cert. denied*, 439 U.S. 824 (1978), and *United States v. Davis*, 617 F.2d 677 (D.C. Cir. 1979), *cert. denied*, 445 U.S. 967 (1980), for guidance. *Nash*, 123 Wis. 2d at 159. In doing so, we noted that in both cases, "the defendants entered into plea agreements calling for them to testify before grand juries" and that they "withdrew from their plea bargains *after* testifying before the grand jury but *before* entering their guilty pleas." *Nash*, 123 Wis. 2d at 159 (emphases added). In both cases, the respective federal courts agreed that while the federal analog to WIS. STAT. § 904.10 "could be read expansively to include the grand jury testimony as being made 'in connection with' the plea agreement," doing so "would be contrary to the purpose and policies promoted by the rule[,]" which is "to promote the disposition of criminal cases by compromise." *Nash*, 123 Wis. 2d at 159.

¶19     As we explained in considering *Stirling* and *Davis*, the exclusion of statements made "in connection with" withdrawn guilty pleas and no contest pleas (and corresponding offers) "was created to allow for free and open discussion between the prosecution and defense *during attempts to reach a compromise*." *Nash*, 123 Wis. 2d at 159 (emphasis added). To exclude incriminating testimony "after all of the negotiations had been completed and the plea agreement was formalized" would not, as explained in *Stirling* and *Davis*, "serve the purpose of the rule[.]" *Nash*, 123 Wis. 2d at 159. Because "[t]he admission of Nash's previous trial testimony [was] consistent with this reasoning[,]" we concluded that the incriminating testimony Nash gave at his co-defendants' trials was *not* made "in connection with" his withdrawn plea despite his having agreed to give the testimony as part of his prior plea negotiation. *See id.* at 159-60. Specifically, we

noted that Nash's testimony at the co-defendants' trials "was given *after* the plea agreement had been reached[,]" meaning "[t]here was to be no more negotiation and, therefore, no more reason to promote negotiation." *Id.* at 160 (emphasis added). Accordingly, we concluded that WIS. STAT. § 904.10 did not preclude admission of the challenged incriminating testimony despite the later withdrawal of Nash's plea. *See Nash*, 123 Wis. 2d at 160.

¶20 More recently, our supreme court cited *Nash* in *State v. Myrick*, 2014 WI 55, 354 Wis. 2d 828, 848 N.W.2d 743, and reaffirmed that WIS. STAT. § 904.10's purpose "is to encourage free and open discussion between prosecutor and defendant *during plea negotiations*" and "that WIS. STAT. § 904.10 does not exclude statements a defendant makes *after plea negotiations are finalized*." *Myrick*, 354 Wis. 2d 828, ¶¶35, 42 (emphases added).[5] In *Myrick*, our supreme court was tasked with determining whether the circuit court had "improperly admitted incriminating statements [Myrick] made during the preliminary hearing for charges against" another individual. *Id.*, ¶1. There, Myrick asserted that the statements at issue had been made "in connection with an offer to plead guilty" and were therefore inadmissible pursuant to § 904.10. *Myrick*, 354 Wis. 2d 828, ¶1. The supreme court agreed because *unlike in Nash*, where the statements at issue were clearly made *after* plea negotiations had concluded, *see Nash*, 123 Wis. 2d at 159-60, the incriminating statements at issue in *Myrick* were given "in

---

[5] While the State cites *State v. Myrick*, 2014 WI 55, ¶42, 354 Wis. 2d 828, 848 N.W.2d 743, in its Reply brief on appeal, it is, somewhat inexplicably, the first time in this matter that *either* party cited to *Myrick*, a Wisconsin Supreme Court opinion that not only interprets the precise statutory language at issue but also clearly controls the outcome of this case. The same can be said for the parties' respective failure to cite *State v. Nash*, 123 Wis. 2d 154, 366 N.W.2d 146 (Ct. App. 1985), at all, which is also on point and has been controlling law on what "in connection with" means in the context of WIS. STAT. § 904.10 for 40 years.

order to keep the possibility of a plea bargain open." *See Myrick*, 354 Wis. 2d 828, ¶¶2, 17.

¶21 In concluding that WIS. STAT. § 904.10 precluded admission of Myrick's incriminating statements, the supreme court explained that § 904.10 "clearly and unambiguously indicates [an] intent to prohibit for any purpose the use of statements made in connection with a guilty plea, later withdrawn, at a subsequent trial." *Myrick*, 354 Wis. 2d 828, ¶19 (alteration in original; quoting *State v. Mason*, 132 Wis. 2d 427, 433, 393 N.W.2d 102 (Ct. App. 1986)). Section 904.10, however, does not apply to statements that were not part of the actual plea negotiations: "WIS. STAT. § 904.10 will not prevent the admission of a defendant's confession *that was not made as part of plea negotiations* with the district attorney." *Myrick*, 354 Wis. 2d 828, ¶22 (emphasis added). Applying this interpretation to Myrick's statements, the supreme court concluded Myrick's testimony at another individual's preliminary hearing was made "in connection with his offer to plead guilty *that the State had not then accepted*[,]" and therefore Myrick's incriminating statements were inadmissible pursuant to § 904.10. *Myrick*, 354 Wis. 2d 828, ¶¶31-32 (emphasis added).

¶22 While neither *Nash* nor *Myrick* involved incriminating allocution statements made at sentencing and prior to withdrawal of a plea, those cases have clearly construed WIS. STAT. § 904.10's prohibition against allowing the State to introduce "[e]vidence of statements made in court or to the prosecuting attorney in connection with" withdrawn guilty pleas or no contest pleas as applying *only* to statements a defendant makes while plea negotiations are ongoing and *prior* to a plea negotiation being finalized and accepted—not inculpatory statements made

*after* a plea has been finalized.[6] *See also* **Mason**, 132 Wis. 2d at 428 (concluding that § 904.10 "renders statements made *during* a guilty plea hearing inadmissible for any purpose at a subsequent trial" (emphasis added)). Here, it is undisputed that Rejholec entered a no contest plea and that at the time he made the inculpatory allocution statements—statements that were indisputably voluntary— plea negotiations had long since ceased and the circuit court had already accepted his plea. Accordingly, pursuant to the statutory interpretation set forth in **Nash** and **Myrick**, § 904.10 does not prohibit the State from introducing Rejholec's allocution statements at a subsequent trial, and the court misapplied the law in concluding otherwise.[7]

¶23 While **Myrick** and **Nash** clearly control the outcome here as it relates to the applicability of WIS. STAT. § 904.10, the State's steadfast reliance on **Greve**

---

[6] Rejholec asserts that interpreting WIS. STAT. § 904.10 so as to allow the State to introduce his inculpatory allocution statements would prohibit him from providing a "complete defense" because the statute would prevent him from introducing evidence of the context in which his statements arose. Specifically, Rejholec argues that "[a]llowing the State to introduce [his] allocution statement, but barring any evidence of the circumstances surrounding that statement violates [his] right to present a complete defense, but would be the effect if the State's proposed interpretation of … § 904.10 is adopted." Because we are bound by the interpretation of § 904.10 set forth in **Myrick**, 354 Wis. 2d 828, and **Nash**, 123 Wis. 2d 154, we do not address Rejholec's "complete defense" argument further.

[7] In Rejholec's prior appeal, we acknowledged that pursuant to WIS. STAT. § 971.31(10), "[a] circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction despite a defendant's plea." **State v. Rejholec**, 2021 WI App 45, ¶5 n.2, 398 Wis. 2d 729, 963 N.W.2d 121; *see also* WIS. STAT. § 808.03(3). Rejholec was not *required*, however, to wait until after he had entered a plea to appeal the circuit court's order; rather, he had the option of pursuing an interlocutory appeal with this court challenging the circuit court's denial of his suppression motion prior to entering his plea and therefore prior to making the inculpatory allocution statements at issue here. *See* § 808.03(2); **State v. Rabe**, 96 Wis. 2d 48, 57-58, 291 N.W.2d 809 (1980) (confirming that a party may pursue an appeal pursuant to § 808.03(2) in criminal cases). While appellate courts do not always favor such interlocutory appeals in criminal cases, *see, e.g.*, **Rabe**, 96 Wis. 2d at 59, Rejholec nevertheless could have pursued such an interlocutory appeal. A review of the Record reveals that Rejholec did not avail himself of this option.

is not entirely misplaced as *Greve*'s rationale offers an example of another scenario in which a defendant's inculpatory statements were made in the context of presenting the sentencing court with potentially mitigating information in the hope that such information would lead to a lesser sentence. *See Greve*, 272 Wis. 2d 444, ¶20. And, as in *Greve*—but in contrast to *Crowell*—there is no statute preventing statements such as Rejholec's from being admissible at a later proceeding. *See Greve*, 272 Wis. 2d 444, ¶20 (explaining that WIS. STAT. § 972.15, the statute applicable to court-ordered presentencing investigation reports that was at issue in *Crowell*, does not apply to defense-prepared presentencing investigation reports).

¶24 Having determined that WIS. STAT. § 904.10 does not preclude the State from introducing Rejholec's allocution statements in subsequent proceedings, we turn briefly to the alternate rationales the circuit court provided to support its decision to grant Rejholec's motion: (1) that doing so was necessary based on its belief that "the goal of a plea withdrawal is to put the person who entered the plea in the position they were in before they entered the plea"; (2) Rejholec's allocution statements "are contaminated by the" interrogation statements we ordered suppressed in Rejholec's earlier appeal; and (3) the circuit court's belief that allowing the State to introduce Rejholec's statements "would be a miscarriage of justice" "under the specific facts of this case[.]"

¶25 The circuit court's explanation for each of these rationales was cursory and not supported by clear legal authority or "a demonstrated rational process," and we therefore reject each of these rationales in turn. *See Novy*, 346 Wis. 2d 289, ¶36. First, cases such as *Nash* make clear that inculpatory statements made *after* a defendant enters a plea but *before* the defendant is allowed to withdraw the plea are admissible. *See Nash*, 123 Wis. 2d at 159-60; *see also*

*Greve*, 272 Wis. 2d 444, ¶¶2-4 (allowing admission of inculpatory statements from defendant's presentencing memorandum despite conviction for which memorandum was created having been reversed on appeal).

¶26 Second, even if Rejholec's decision to enter the no contest plea was related to the circuit court's prior erroneous denial of his motion to suppress inculpatory interrogation statements, Rejholec's allocution statements were voluntary and sufficiently attenuated from the constitutional violation that occurred during the interrogation so as to render the allocution statements admissible. *See, e.g.*, *State v. Artic*, 2010 WI 83, ¶66, 327 Wis. 2d 392, 786 N.W.2d 430 (explaining the three factors courts consider in determining attenuation—temporal proximity, intervening circumstances, and "the purpose and flagrancy of the official misconduct"); *State v. Anderson*, 165 Wis. 2d 441, 447-48, 477 N.W.2d 277 (1991).

¶27 Here, approximately 18 months passed between the time of the interrogation and the June 2018 sentencing hearing at which Rejholec made inculpatory statements during his allocution, and the circuit court made clear to Rejholec at the sentencing hearing that he could—but was "not required to"—make a statement to the court. Moreover, even if Rejholec entered the no contest plea specifically *because* the court had denied his prior suppression motion, Rejholec could have exercised his statutory right to allocution *without* having made inculpatory statements. However, for whatever reason—be it in the hopes of leniency, a desire to clear his conscience, or any other number of reasons unbeknownst to this court—it was ultimately Rejholec's choice to make inculpatory statements at the sentencing hearing, and his decision to do so was sufficiently attenuated from the January 2017 constitutional violation.

¶28    Finally, to the extent the circuit court determined "a miscarriage of justice" would occur if it did not grant Rejholec's motion, it did not explain its conclusion other than referencing "the specific facts of this case[.]"  While the court presumably meant that it would be "a miscarriage of justice" to allow introduction of Rejholec's statements in light of his indication he would not have entered a plea at all—and therefore would not have made the allocution statements at issue—had the circuit court properly suppressed the inculpatory interrogation statements in the first place, this does not change the fact that Rejholec's inculpatory allocution statements were voluntary.  We presume the court's decision was largely based on the statutory language, but as we have set forth, that decision was divorced from the controlling caselaw.  Accordingly, we cannot conclude that the circuit court properly applied the law in reaching its conclusion.

## IV.  CONCLUSION

¶29    While Rejholec's success in his first appeal may ring somewhat hollow from his perspective in light of our conclusion here given his indication that he would not have entered a plea at all had the circuit court properly suppressed the interrogation statements at the outset—and therefore would not have made the allocution statements at issue here as a result—we cannot make outcome-driven decisions but rather must apply the law as it exists.  We are bound by *Myrick* and *Nash*, and based on their interpretation of WIS. STAT. § 904.10, the law is clear that the meaning of "in connection with" as used in § 904.10 requires us to conclude the statute does not bar the use of Rejholec's allocution statements in a subsequent trial.  Accordingly, the circuit court erroneously applied the law in granting Rejholec's motion to preclude the State from introducing his allocution statements as evidence in further proceedings, and its order doing so is reversed.

17

*By the Court.*—Order reversed.

Recommended for publication in the official reports.